**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LINDA THOMAS WILKINS, ON | § | |
| BEHALF OF THOMAS H. WILKINS, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | A-14-CV-00160-SS-ML |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of the Social Security | § | |
| Administration, | § | |
| Defendant. | § | |

**ORDER**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Acting Commissioner of the Social Security Administration, Carolyn Colvin, in her official capacity ("the Commissioner"), denying disability benefits to claimant Thomas H. Wilkins ("Claimant"). Claimant Wilkins is now deceased, and his wife, Linda Thomas Wilkins, brings this claim as Plaintiff on his behalf. Before the court are Plaintiff's Amended Complaint, [Dkt. #5], the Commissioner's Answer thereto [Dkt. #11], Plaintiff's Brief in support of the Complaint [Dkt. #15], the Commissioner's Brief in response [Dkt. #17], and Plaintiff's reply Brief [Dkt. #18].

This case was referred to the Magistrate Judge by United States District Judge Sam Sparks pursuant to 28 U.S.C. § 636(b). Both parties have waived the right to proceed before a District Judge and have consented, pursuant to 28 U.S.C. § 636(c), that all proceedings in the case, including the entry of final judgment, shall be conducted by the Magistrate Judge. After reviewing the briefing of the parties, the relevant case law, as well as the entire case file and record of the administrative proceedings, the undersigned issues the following Opinion and Order.

I.    BACKGROUND

    A.    **Claimant's Recorded Vocational and Medical History**

Claimant was born on June 11, 1947.  R. 1969.  He had a high school education and received additional training during his service in the military.  *Id.* Claimant spent his career as an Air Force mechanic, installing ejection seats in aircraft.  R. 1970-71.  According to Claimant, ejection seats weigh 287 pounds and must be lifted with the back and arms alone, making injury common among servicemen doing this work.  R. 859.   After retiring from the Air Force, Claimant continued installing ejection seats in aircraft for a civilian company, Lear Siegler (LSI). *Id.*

It is undisputed that, based on Claimant's employment history, the date on which he was last insured under the Social Security program was December 31, 1997.  Pl's Br. [Dkt. #15] at 4; R. 687.  The alleged onset of his period of disability was June 15, 1992.  Pl's Br. [Dkt. #15] at 1; R. 681.  Therefore, the court's focus on Plaintiff's medical history is limited to the period between June 15, 1992 and December 31, 1997.  *Brown v. Astrue*, 344 F. App'x 16, 20 (5th Cir. 2009).[1]

While working at LSI, Claimant sought treatment for shoulder, elbow, back and foot pain, as well as hypertension and gout (affecting his feet and his knee), on many occasions.  R. 805-06.  Claimant reported at least 11 doctor's appointments or medical leaves of absence for these medical issues in 1991 (including an 18-day medical leave of absence during April and

---

[1] Claimant went on to develop additional severe medical conditions, including pancreatic cancer, diagnosed in approximately 2003.  R. 1972-73.  The focus of the disability inquiry, however, is whether the claimant was suffering from a disabling medical condition on or before the date last insured—December 31, 1997.  Accordingly, the court does not consider evidence of medical conditions—even per se disabling conditions—that became medically determinable after the date last insured.  *Brown*, 344 F. App'x at 20.

May of 1991) and at least 9 doctor's appointments for the same issues in 1992.  R. 805-08.
Claimant lost his job in 1992, which he attributed to his back problems.  R. 1970-71; R. 563.

After he stopped working, Claimant continued to seek treatment for his various medical issues throughout the relevant time period, reporting no fewer than 10 doctor's appointments each year from 1993 to 1997 (with as many as 12 doctor's appointments in 1996).  R. 805. Between 1991 and 1997, Claimant was diagnosed and treated for multiple conditions including:

- right shoulder tendonitis and arthritic changes to his shoulder joints affecting his range of motion, *see, e.g.,* R. 505, 508, 525, 527-28, 530, 533-35, 541-44, 561, 564, 565, 568, 1726;

- degenerative joint disease affecting his shoulders (see above), his cervical and lumbar spine, *see, e.g.,* R. 501, 504, 561, 564, 566, 578, 593, 1678, 1682, 1683, 1767, and his wrists, *see, e.g.,* R. 564, 548, 1679, 1722;

- a herniated disc between L4 and L5 vertebrae and chronic low back pain, *see, e.g.,* R. 498, 500, 504 (noting "mod. muscle spasm"), 519, 534, 553 (noting "mod. muscle spasm), 562, 563, 593;

- gout and peripheral neuropathy affecting his feet, *see, e.g.,* R. 498, 503, 507, 510-11, 521, 524, 531, 533, 536, 539, 543-44, 560-61;

- hypertension (controlled with medication), *see, e.g.,* R. 498, 500, 503, 507, 517, 523; and

- hearing loss, *see, e.g.,* R. 537, 569, 687, 573.

Claimant, a veteran of the Vietnam War, applied to the Department of Veterans' Affairs (the "VA") for unemployability benefits on February 11, 1999.  R. 1549-53.  The VA determined Claimant was entitled to 100% unemployability benefits, retroactive to March 11, 1998 based on

3

the date of his application. *Id.* The disabilities that formed the basis of this finding of unemployability are some of the same disabilities for which Claimant sought frequent treatment throughout the time between his last date employed and his last date insured under the Social Security program. *Id.*

### B.   The Original Administrative Proceedings (2004-2009)

The procedural history of Claimant's application for Social Security disability benefits extends back over ten years. On October 19, 2004, Claimant filed an application for a period of disability and disability insurance benefits, alleging the onset of his disability was June 15, 1992. R. 41. The Claimant's application was denied initially and again upon reconsideration. *Id.* On May 10, 2005, Claimant requested a hearing before an administrative law judge (ALJ). *Id.* On April 13, 2006, ALJ Marguerite Lokey presided over the hearing, at which Claimant and a vocational expert (VE) testified. *Id.*

On February 8, 2007, the ALJ issued an unfavorable decision, finding that although Claimant met the insured status requirements of the Social Security Act through December 31, 1997, had not engaged in substantial gainful activity during the relevant time period of June 15, 1992 through December 31, 1997, and had a severe combination of impairments, including right shoulder tendonitis, degenerative changes to his cervical and lumbar spine, gout, feet problems, and hearing loss, this combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (which would have dictated a finding of disability). R. 43-44. The ALJ found Claimant retained the residual functional capacity (RFC) to perform light work (lift and/or carry 20 pounds occasionally and 10 pounds frequently), with the ability to stand, sit, or walk for eight hours in an eight hour workday and the following limitations:  no overhead work; occasional bending, and working in the proximity of

4

people but not in a situation where he would have to communicate with people much on the job due to his hearing loss.   R. 44.

Based on the testimony of the VE, the ALJ then found Claimant unable to perform his past relevant work as an aircraft assembler, which is customarily performed as skilled medium exertional work.  R. 46.  The ALJ noted that Claimant was born on June 11, 1947, was 50 years old, which is defined as an individual closely approaching advanced age, on his date last insured, had at least a high school education, and was able to communicate in English.  R. 46.  Based on the above findings and the testimony of the VE, the ALJ then found that, through his date last insured, Claimant retained the ability to perform other work existing in significant numbers in the national economy, such as office helper, electronic accessories assembler, and small products assembler. R. 47.  Therefore, the ALJ found Claimant was not disabled during the relevant time period, June 15, 1992, through December 31, 1997. R. 48.

Claimant timely requested review by the Appeals Council, which was denied.  R. 4-7. Claimant then timely filed a civil action in the United States Court for the Western District of Texas.  *Wilkins v. Colvin*, No. 07-CV-993-SS (W.D. Tex., filed Dec. 7, 2007).  On November 24, 2008, United States Magistrate Judge Andrew W. Austin issued a Report and Recommendation finding "[b]ecause the ALJ in this case failed to consider over 30 pages of medical records properly submitted by the Plaintiff in this case, the ALJ's decision was not supported by substantial evidence."  R. 715 (emphasis added).  The Magistrate Judge specifically identified the 30 pages of necessary evidence as Exhibit A of the Claimant's brief (the "A File" excerpts). *Id.* at n. 4.  Magistrate Judge Austin additionally found "the ALJ's determination that Plaintiff has the residual functional capacity to perform light work is not supported by substantial evidence.  In making her assessment, the ALJ failed to consult a medical expert and failed to

sufficiently question the vocational expert regarding the effect of Plaintiff's impairments on his ability to maintain employment." R. 715-16 (emphasis added).

The Magistrate recommended, and the District Court ordered, that the ALJ's decision be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). R. 709; *Wilkins v. Colvin*, No. 07-CV-993-SS (W.D. Tex. Jan. 8, 2009). The District Court ordered: "The ALJ should conduct a new hearing and assess Plaintiff's residual functional capacity based on all of the relevant evidence in the record. Additionally, the ALJ should further develop the record of the case by obtaining the testimony of a medical expert and another vocational expert to testify regarding Plaintiff's impairments and his ability to obtain and maintain employment." *Id.* (emphasis added).

### C.       Proceedings on Remand

On February 3, 2009, the Appeals Council issued a Remand Order ordering the ALJ to offer Claimant the opportunity for a new hearing, take any further action needed to complete the administrative record, and issue a new decision. R. 721. The ALJ convened a new hearing on December 17, 2009. R. 1691. At that hearing, Claimant testified and a medical expert appeared, but his testimony was not taken because it was clear the ALJ had not provided the expert a copy of the "A File"—the documents improperly omitted from the record in the first hearing, and the basis for remand in this case. R. 1985-87; *see also* R. 715 at n. 4. To obtain the necessary expert testimony, the ALJ convened a second supplemental hearing on February 25, 2010, at which Claimant appeared. John R. Vorhies, Jr., MD, an internal medicine physician, appeared by telephone and testified as a medical expert (ME), and Jennifer Ann Maginnis, a vocational expert, appeared in person and testifed. R. 681-82.

6

The appearance of the ME, Dr. Vorhies, by telephone at the February 25, 2010 hearing was plagued by technical difficulties.  The phone connection was such that the ME and the Claimant's attorney could not hear each other at times.  *See generally* R. 1998-2018.  It appears the court reporter was not able to hear the expert either, as the transcript of his testimony contains over 100 omissions marked "inaudible."  Pl's Br. [Doc. #15] at 13; R. 1996-2018.  Additionally, the ALJ did not provide the Claimant's attorney, prior to the February 25, 2010 hearing, with a numbered copy of the "A File" and other exhibits admitted by the ALJ on remand (that were not made part of the record of the 2007 proceedings). R. 683.  Further, it was unclear from the ME's testimony whether he had received and reviewed those records.  R. 2004-05, 2018.  The ALJ attempted to remedy these problems by offering to provide Claimant's attorney with a numbered copy of the exhibits admitted on remand after the hearing concluded, and allowing Claimant's attorney to ask Dr. Vorhies additional questions via post-hearing written interrogatory.  R. 2018.

The ALJ, however, did not provide Claimant's attorney with a numbered copy of the "A File" prior to the ALJ to the post-hearing deadline set by the ALJ for submitting interrogatories to Dr. Vorhies.  Pl's Br. [Dkt. #15] at 8; R. 861.  The attorney nevertheless submitted the following interrogatory to the expert:  "It is my understanding that you are of the opinion that Mr. Wilkins had no condition that was at listing level at the time of his date last insured.  On what evidence is your opinion based?  Please cite each exhibit with specificity."  R. 863.  The expert responded by letter, "I have already testified on the medical evidence as a whole mentioning specific impairments and their significance.  If [Claimant's attorney] thinks that one of the impairments Meets a Listing, the most efficacious way for me to respond is for her to cite a specific document in the file to support her contention, then I can focus my comments

appropriately."  R. 868.  The ALJ provided Claimant's attorney with a summary of this response

and a copy of the "A file" and other material admitted into evidence on remand.  R. 869.  It

remains unclear from the record whether the copy of the "A File" and other material provided to

counsel was numbered in any way that would enable written interrogatories referencing specific

exhibits. [2]

  After receiving these materials, the Claimant's attorney propounded four additional

interrogatories, but none addressed a specific document or exhibit.  R. 871-72.  The ALJ refused

to submit the second group of interrogatories, instructing the attorney to "address any

interrogatories to specific testimony or specific evidence referred to during the hearing."  (R.

874).  Along with this written instruction, the ALJ provided the attorney with a CD recording of

the hearing.  *Id.*  The attorney notified the ALJ that the expert's testimony was largely inaudible

on the CD, as it had been at the hearing, and again requested that the expert answer the second

group of interrogatories as written.  R. 877.  The attorney did not object to the form or

numbering of the exhibits provided by the ALJ.  *Id.*  After giving the attorney additional time to

---

[2] The original "A File" is unnumbered.  *See* R. 833-58 (pre-hearing brief referencing "unnumbered exhibit in A section of file—2000 claim").  The ALJ's opinion refers to exhibits from the "Prior File" with reference to Exhibit numbers and page numbers that have been added to the documents by hand, *see* R. 681-697, but it is not clear when those numbers were added to the record.  On appeal, Claimant cites to the official record numbers stamped on each document, but that numbering system is a part of the appeals process and would not necessarily have been available immediately post-hearing.

Notably, the documents that appeared in the "A File" attached to Claimant's 2007 brief to the District Court in *Wilkins v. Colvin*, No. 07-CV-993-SS—the documents the ALJ was specifically ordered to include in the record on remand—do not appear in a recognizable group anywhere in the "Prior File" exhibits.  Only this court's page-by-page comparison of the voluminous "Prior File" documents in the 2010-2011 remand record with the 30 pages of "A File" documents attached to Claimant's 2007 brief confirmed that the A File documents are, indeed, present in the record.  The "A File" documents are dispersed through several hundred pages of medical records.

Were it not for the fact that the ALJ offered counsel numerous extensions to prepare her interrogatories and reconcile this voluminous documentary evidence with her prior briefing, the court would be inclined to find this post-hearing document dump an entirely inadequate response to the District Court's specific instruction to consider, on remand, all relevant evidence, specifically including the excerpts from the "A File" that were improperly excluded from the record in 2007.

propound more specific interrogatories, the ALJ notified her that the record would be closed and a decision issued.  R. 878.  The attorney did not propound any additional interrogatories.

### D.      The ALJ's 2011 Decision

The ALJ issued an unfavorable decision on March 14, 2011, finding at step one of the sequential evaluation process that Claimant met the insured status requirements through December 31, 1997, and had not engaged in substantial gainful activity since June 15, 1992, his alleged disability onset date. R. 687. At step two, relying "especially [on] Dr. Vorhies' testimony, which is given significant weight," *id.*, the ALJ found Claimant suffered from the following severe combination of impairments through his date last insured: disorders of the lumbar and cervical spine; right shoulder tendonopathy; hearing loss; obesity; arthralgias; some sensory neuropathy; hypertension; and gout. *Id*. At step three, although finding Claimant's combination of impairments to be severe, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the regulations. R. 689. Before continuing on to step four, the ALJ found that based on Claimant's impairments, Claimant had the residual functional capacity (RFC) to perform a limited range of light work on a sustained basis. R. 689. Specifically, the ALJ found Claimant was able to lift 20 pounds at a time and to frequently lift or carry 10 pounds, walk/stand for six hours in an eight-hour workday, sit six hours in an eight-hour workday, and bend/stoop occasionally, but he was unable to do any overhead work or any work directly with the public.  R. 689. Continuing on to step four of the sequential evaluation process and relying on the testimony of the VE, the ALJ found Claimant was unable to perform his past relevant work as an airframe and power plant mechanic. R. 695. Before moving on to step five, the ALJ noted Claimant was born in June 11, 1947, was a younger individual, age 18 to 49, through June 9,

1997, then became an individual closely approaching advanced age when he attained 50 years of age through the date last insured of December 31, 1997.  R. 695. Additionally, the ALJ noted Claimant had at least a high school education, was able to communicate in English, and transferability of job skills was not material to the determination of disability under the Medical-Vocational Rules. R. 695. Moving on to step five, and again relying on the testimony of the VE, the ALJ found Claimant was capable of performing other work existing in significant numbers in the national economy, including such representative occupations as photocopier attendant, housekeeper, and laundry worker. R. 695-96. Finding Claimant capable of performing other work, the ALJ concluded that Claimant had not been under a disability from June 15, 1992, his alleged disability onset date, through December 31, 1997, his date last insured.  R. 696-97.

Claimant requested review of the ALJ's decision, but passed away shortly after filing his administrative appeal.  R. 671.  His wife (Plaintiff) has continued the proceedings on behalf of his estate.   Plaintiff's request for review was denied by the Appeals Council on October 22, 2013. R. 640-45. Plaintiff timely filed suit in this court, and contends that remand is warranted in this case for an award of benefits or, in the alternative, further administrative proceedings.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Standards

In order to qualify for benefits, a claimant must suffer from a disability. 42 U.S.C. § 423(d)(1)(A).   The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity."  *Id.* The Commissioner follows a five-step process in analyzing whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. § 404.1520; *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir.

2014).  The analysis is summarized as follows:

> **1.  Is the claimant is engaged in substantial gainful activity?**
>
> A claimant who is working is not disabled regardless of the medical
> findings.  20 C.F.R § 1520(a)(4)(i); *see also* 20 C.F.R. § 404.1510.
>
> **2. Is the claimed impairment "severe"?**  A "severe impairment" must
> significantly limit the claimant's physical or mental ability to do basic
> work activities. This determination must be made solely on the basis of
> the medical evidence.  20 C.F.R § 1520(a)(4)(ii); *see also*
> 20 C.F.R. §§ 404.1508; 404.1509; 404.1521.
>
> **3. Does the impairment equal or exceed the severity of an Appendix 1
> impairment?**  The hearing officer must then determine if the impairment
> equals or exceeds in severity certain impairments described in Appendix
> 1 of the regulations. This determination is made using only medical
> evidence.  20 C.F.R § 1520(a)(4)(iii); *see also* 20 C.F.R. § 404.1511.
>
> **4. Does the claimant possess the residual functional capacity to perform
> his past work?**  If the claimant has a "severe impairment" covered by the
> regulations, the hearing officer must determine whether the claimant can
> perform his past work despite any limitations.  20 C.F.R § 1520(a)(4)(iv).
> This assessment is based on reports from treating physicians and medical
> consultants about the claimant's ability to sit, stand, walk, lift, carry, and
> perform other work-related activities. 20 C.F.R. §§ 404.1513(b)(6),
> 404.1513(c)(1).

*5. Can the claimant perform other gainful and substantial work in the economy?* If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R § 1520(a)(4)(v).

The claimant has the burden of proof for the first four steps. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). At step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). If the Commissioner "fulfills his burden of pointing out potential alternative employment, 'the burden then shifts back to the claimant to prove that he is unable to perform the alternate work.'" *Selders*, 914 F.2d at 618 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 5th Cir. 1987)). If there is a finding at any step that the claimant is or is not disabled, the ALJ need not continue the analysis. *Copeland,* 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

**B.   Standard of Review**

Judicial review of the ALJ's decision is limited. Specifically, this Court reviews: (1) whether the ALJ's decision was supported by substantial evidence; and (2) if so, whether the ALJ made any errors of law in evaluating the evidence. *Copeland*, 771 F.3d at 923 (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Procedurally, the administrative process need not have been perfect, and this Court will not vacate a judgment unless a procedural defect has affected the substantial rights of a party. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)

(citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).   Procedural errors are therefore subject to "harmless error" review.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988) (procedural errors are a basis for remand only if they "would cast into doubt the existence of substantial evidence to support the ALJ's decision")).

Substantial evidence is "evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Copeland*, 771 F.3d at 923 (citing *Perez*, 415 F.3d at 461). In making these determinations, the Court can neither reweigh the evidence nor substitute its judgment for that of the ALJ, *id.*, and yet "it is imperative that [the Court] scrutinize the record in its entirety to determine the reasonableness of the decision reached by the Social Security Administration and whether substantial evidence exists to support it." *Murray v. Astrue*, 419 F. App'x. 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).  The Court "may affirm only on the grounds the Commissioner stated for his decision." *Copeland*, 771 F.3d 920 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

## III.   ANALYSIS

Plaintiff has presented the following three issues for review:

- *Whether the ALJ Violated Plaintiff's Right to Due Process by Relying on the Medical Expert's Testimony Despite Plaintiff's Unanswered Interrogatories*

- *Whether the Inaudible Medical Expert Testimony at the Administrative Hearing Allows for a Complete Review of the Record*

- *Whether the ALJ's RFC Finding is Supported by Substantial Evidence.*

Pf's Brief [Dkt. #15] at 5-6.  The court will address each in turn, bearing in mind the limited and deferential standards of review set out above.

### A.      The ALJ's Post-Hearing Remedy Satisfied Due Process

"Due process requires that a claimant be given the ***opportunity*** to cross-examine and subpoena the individuals who submit reports." *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (emphasis added).  In circumstances such as this one, where the claimant's attorney had the opportunity to cross examine the witness at the hearing and reserved the right to submit interrogatories concerning materials submitted post-hearing, the opportunity to submit such interrogatories satisfies due process. *Bayer v. Colvin*, 557 F. App'x 280, 286 (5th Cir. 2014). Nevertheless, the right to continue a cross examination via post-hearing interrogatories is not unlimited. *Id.*  The ALJ may properly refuse to submit interrogatories that "did not hinge on the later-supplied [information]." *Id.*

Plaintiff contends the due process issue in this case is not limited to interrogatories about post-hearing submissions, but extends to the issue of whether counsel's opportunity to cross examine Dr. Vorhies at the hearing was inadequate because of a faulty telephone connection. Pf's Br. [Doc. #15] at 7-12.  A review of the record, however, demonstrates that the ALJ stopped the hearing to deal with technical difficulties with the phone connection, R. 1998, confirmed that those present could hear Dr. Vorhies, R. 1999-2000, and brought in another microphone to ensure Dr. Vorhies could hear Plaintiff's counsel. *Id.*  The record establishes counsel was able to question Dr. Vorhies directly except on a few occasions, when the ALJ repeated her questions verbatim to the expert. R. 2007, 2011, 2015.

Counsel's objection during the hearing did not concern the quality of the telephone connection, but "whether or not all the evidence has been admitted."  R. 2018.  Counsel requested "a hearing where I can refer to that evidence and know how it's marked, in fairness to the claimant." *Id.*  In response to counsel's concerns about whether Dr. Vorhies had properly

received and considered the unnumbered "A File" and other relevant medical evidence, the ALJ offered counsel the right to submit post-hearing interrogatories after receiving copies of the material in question. R. 2018. Counsel agreed this would be an acceptable remedy. *Id.* On this record, the court concludes counsel had an adequate opportunity to cross examine Dr. Vorhies at the hearing, which the ALJ properly offered to supplement by allowing post-hearing interrogatories after providing marked copies of the evidence. *See Bayer*, 557 F. App'x at 286.

It is possible that the ALJ's failure to provide this material prior to the deadline to submit post-hearing interrogatories would have created a due process issue, but the ALJ offered counsel repeated extensions of time to propound additional interrogatories ***after*** providing her with all requested exhibits. R. 869, 871-72. After receiving the "A File" evidence and other medical records, counsel propounded broad interrogatory questions that were not directed towards any specific item of evidence. R. 871-72. The ALJ gave counsel an opportunity to direct her questions to specific evidence, but counsel stood on her original interrogatories. R. 877-78. The ALJ notified counsel she would close the record and issue a decision unless counsel propounded additional interrogatories, but counsel did not respond. R. 878. On these facts, the ALJ's refusal to submit the broad interrogatories propounded by counsel did not deny Plaintiff due process. *Bayer*, 557 F. App'x at 286.

### B.      The ALJ Fairly Summarizes the Inaudible Medical Expert Testimony

It is a separate question whether the technical difficulties with the telephone connection prevent adequate judicial review of the ALJ's findings on appeal. *Bates v. Astrue*, No. 2:05-CV 0269, 2008 U.S. Dist. LEXIS 108552, 5-6 (N.D. Tex. Sept. 8, 2008); *adopted by* 2008 U.S. Dist. LEXIS 72772 (N.D. Tex., Sept. 24, 2008); *aff'd by* 327 F. App'x 516 (5th Cir. 2009). As Plaintiff notes, the transcript of Dr. Vorhies' testimony contains over 100 omissions marked

"inaudible."  Pl's Br. [Doc. #15] at 13; R. 1996-2018.  Some of these involve testimony that is

quite crucial to understand the gravamen of the expert's opinion.  For example:

> ME:  "Yes, the chief complaint has been arthritis of multiple joints and
> ongoing (inaudible) low back pain syndrome.  Apparently, there was a
> (inaudible) low back strain. (inaudible) for an evaluation (inaudible) x-
> rays.  No spine or degenerative (inaudible) multiple joints. (inaudible). . ..
> Spinal stenosis, but no (inaudible) mild central canal stenosis, but no
> neural foraminal stenosis."
>
> ALJ:  Can you kind of explain what that means?
>
> ME:  Stenosis is (inaudible) narrowing of the canal.
>
> . . . .
>
> ALJ:  Can you tell me the significance of that?
>
> ME:  In order to meet or equal a listing 1.04 for back pain you need to
> have motor reflex and sensory changes as well as evidence of neural
> foraminal stenosis or central canal stenosis that impacts the nerve root.  So
> if he doesn't have any of those findings (inaudible) person wouldn't meet
> the listing 1.04.
>
> He did have a history of hypertension, which is usually (inaudible) non-
> severe.  There has—there was a history of chest pain, which is (inaudible).
> The cardiologist thought that there was not any evidence of coronary
> disease.  In 1995 the claimant had (inaudible) no exertional limitations
> were found.  So what we have is (inaudible) we have age-appropriate
> minor degenerative changes in multiple joints as well as the lumbar and
> cervical spine.  We have a normal exertional capacity as documented by
> the treadmill exercise test and non-severe hypertension. So, those
> combinations of impairments would not meet or equal any of the listings.
> (inaudible) limitations (inaudible) to avoid heavy lifting in order to
> prevent exacerbation of the back pain.

R. 2001.  In this sample, the expert's opinion regarding Claimant's "chief complaint" during the

time period and its effect on his exertional capacity is so riddled with "inaudible" notations that,

while the context clues allow the reader to determine the expert opined Claimant had a normal

exertional capacity despite his impairments, there is no way to tell why the expert gave this

opinion or whether the full range of documented medical complaints was considered in coming

to this conclusion.  In terms of specific limitations, the transcript of the expert's testimony is similarly incomplete:

> ALJ:  Did you see anything in the medical records that would suggest that he would be limited in his ability to stand and walk at work?
>
> ME:  Well, we have notes from the (inaudible) standing and walking was not impaired at all.

R. 2001.  Though it is possible to see from this excerpt that the expert opines Claimant could stand and walk, it is not clear how or why he reached that opinion.  The doctor's opinion on Claimant's physical limitations is frankly unintelligible from the transcript of the hearing:

> Attorney:  If he was restricted by his doctor to light duty and he wasn't even able to perform that part of the time and this was the doctor's opinion, not that Mr. Wilkins was just indulging himself because he had some pain, but his doctor restricted him, what does that mean in terms of his limitations?
>
> ME:  Well, when a person comes to their doctor and they say my (inaudible) hurt when I do this (inaudible) the doctor put it down (inaudible).
>
> Attorney:  I'm sorry?  It was reasonable for his doctor to restrict him to light duty?
>
> ME:  The first thing they chose to do—(inaudible) a person that doesn't meet or equal a listing because most people have joint pain at one time or another and almost everybody has back pain at one time or another.
>
> Attorney:  I think my discussion is—
>
> ME:  There's some objective evidence of joint deformity or another objective finding (inaudible).
>
> Attorney:  Well, I think my point is not so much does he meet a listing, but what kind of limitations would he have and his treating doctor limited him to light duty.  My question is was that reasonable?
>
> ME: Was it reasonable to limit him to light duty?
>
> Attorney:  To limit him to light duty.
>
> ME:  Well, normally, normally if I had a patient come to me and complain of pain in the joints (inaudible) and could not (inaudible).

> Attorney:  And so, anytime that there was a visit to the doctor and he was complaining of discomfort and difficulty with activity, the limitation would be reasonable?
>
> ME:  I'm only, I'm only describing the objective changes in the record, but the claimant may choose to limit himself (inaudible).

R. 2008-09.

When a hearing transcript is inaudible, the court may remand the case to the ALJ, without relinquishing jurisdiction, in order to hold a supplemental hearing and obtain the necessary testimony. *McKenzie v. Astrue*, 442 F. App'x. 161, 163 (5th Cir. 2011) (citing *Dudley v. Astrue*, 246 F. App'x. 249, 251-252 (5th Cir. 2007)).  Such "'remands on the basis of these breakdowns in the administrative process should be kept to a minimum so that persons appealing their decision are not unduly burdened by the resulting delay.'"  *McKenzie*, 442 F. App'x at 163 (quoting H.R. Conf. Rep. No. 944, 96th Cong., 2d Sess. 59, reprinted in 1980 U.S. Code Cong. & Ad. News 1277, 1407).

Lower courts applying these principles have found "the critical consideration is whether the deficiencies prohibit meaningful judicial review." *Bates*, 2008 U.S. Dist. LEXIS 108552, *5-6 (aff'd by 327 F. App'x 516); *see also Suarez v. Colvin*, No. 3:13-cv-1459-P-BN, 2014 U.S. Dist. LEXIS 103379, 13-14 (N.D. Tex. June 17, 2014), adopted by No. 3:13-cv-1459-P-BN, 2014 U.S. Dist. LEXIS 102305 (N.D. Tex. July 28, 2014).  If the "ALJ heard [the relevant] testimony during the administrative hearing, and set out, in the administrative decision, the critical parts of [that] testimony," and the Plaintiff has not shown the ALJ's summary of the testimony is inaccurate or that any prejudice results from relying on the ALJ's summary of the testimony, it may be appropriate for the court to rule on the basis of the record as summarized by the ALJ and supported by the documentary evidence. *Bates*, 2008 U.S. Dist. LEXIS 108552,

*5-6.  If, however, the reviewing court "cannot ascertain what evidence the ALJ relied on because of the defects in the transcript—both the inaudible responses and the ALJ's summaries of the evidence instead of the evidence itself—and, therefore, cannot conduct a meaningful review on appeal," remand is necessary to obtain a complete record for review.  *Suarez*, 2014 U.S. Dist. LEXIS 103379 at *13-14.

The serious defects in the transcript of this case weigh heavily in favor of remand. *McKenzie*, 442 F. App'x. at 163.  However, the court is also mindful of the Fifth Circuit's guidance that such remands for "breakdowns in the administrative process" should be avoided whenever possible.  *Id.*  The court finds meaningful judicial review of the merits of the ALJ's decision is possible on this record, even though the hearing transcript on its own is facially inadequate, because the ALJ could hear the ME, R. 1999, and the ALJ's opinion contains a detailed summary of the expert's opinion.  R. 687-89.  *See Bates*, 2008 U.S. Dist. LEXIS 108552, at *5.  The ALJ also detailed the portions of the documentary evidence on which she relied and which she contends support the expert's opinion. R. 688-95.   While Plaintiff challenges the adequacy of the transcript and asserts the ALJ's findings are not supported by substantial evidence, Plaintiff does not claim there are any inaccuracies in the ALJ's summary of the expert's testimony.  *See Bates*, 2008 U.S. Dist. LEXIS 108552, *5-6.  Therefore, the ALJ's summary of this testimony, coupled with the documentary record in the case and the transcript, such as it is, collectively provide a basis for meaningful review of the merits of the ALJ's decision.  *Id.*; *c.f. Suarez*, 2014 U.S. Dist. LEXIS 103379 at *13-14.  As this case has already been working its way through the administrative and federal courts for over a decade, the court finds that, to the extent a final decision on this record is possible, such an outcome would serve the interest of justice far better than yet another remand.  *See Robin v. Comm'r of the SSA*, No.

13-2347, 2014 U.S. Dist. LEXIS 133813, 2-6 (W.D. La. Sept. 23, 2014) ("[W]here a case has been pending for some time and has been before an ALJ on more than one occasion, under certain circumstances, courts have concluded it does not serve justice to remand the case for further proceedings.").

### C.    The ALJ's RFC Findings Are Supported by Substantial Evidence

#### 1. The Record Contains Substantial Evidence

On remand, the ALJ was charged with developing expert medical testimony and reviewing the full record to make a finding, supported by substantial evidence, regarding the Claimant's residual functional capacity (RFC).  R. 709.  The ALJ was further charged with developing vocational expert testimony identifying at what level, if any, Claimant could obtain and maintain employment given his limitations.  R. 709.  It is settled law that the ALJ "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir.1984)). Reversal is only warranted, however, if the Plaintiff can establish that any failure on the ALJ's part prejudiced the Claimant.  *Id.*  "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Id.* at n. 22.

As discussed in detail above, the record in this case contained serious defects.  However, the ALJ made effective, good faith efforts to cure those defects by (1) providing multiple opportunities to question the medical expert after providing copies of the medical evidence and a CD of the hearing to the attorney and (2) by fairly summarizing the medical expert's testimony at length in her opinion.  The ALJ affirmatively represented that she gave careful consideration to

the entire record, R. 687, and this court's exhaustive review of the record evidence establishes that the documents from the "A file" on which remand was based were, in fact, included in the record on remand.   While there may have been ways this process could have been clearer, Plaintiff has not established that any defects in the hearing and post-hearing procedures excluded additional evidence that might have led to a different decision.  *Ripley*, 67 F. 3d at 557, n. 22.

Plaintiff's assertion that the ALJ's determination is not supported by substantial evidence challenges the ALJ's evaluation of the voluminous medical record concerning Claimant's residual functional capacity (RFC).  Pl's Br. [Dkt. #15] at 14-18.  In particular, Plaintiff contends the ALJ should have given more weight to portions of the medical record that document Claimant's complaints of foot and shoulder pain.  *Id.*  Plaintiff asserts that, had the ALJ properly considered this information, Claimant's RFC would have been characterized as sedentary, at best.  *Id.*  If Claimant's RFC had been characterized as sedentary, Plaintiff contends this rating, in combination with Claimant's having turned 50 during the relevant time period, would have dictated a finding of disability under the regulations.   *Id.* at 18, citing Medical-Vocational Guideline Rule 201.06.

### 2. *Weighing Conflicting Evidence of RFC is the Province of the ALJ*

A claimant's RFC is a combined medical assessment of a claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to do work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).    "Conflicts in the evidence are for the [ALJ] to resolve." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

In this case, the ALJ gave the testimony of the ME, Dr. Vorhies, "significant weight."  R. 687.  The ALJ's summary of Dr. Vorhies' testimony is that Claimant's chief complaint during the relevant time period concerned "arthralgias in multiple joints, along with chest pain," the

arthralgias were "minimal," there was no evidence of coronary artery disease, and Claimant did not meet a "listed impairment" that would justify a finding of disability at step three of the analysis.  R. 689.   The ALJ's summary makes clear that Dr. Vorhies' opinion focused on describing the observable changes to Claimant's body documented in the medical records and did not extend to opining on the reasonableness of any functional limitations described by Claimant or the physicians whose opinions are documented in the medical record.  R. 687, 2009, 2011-17.  However, Dr. Vorhies specifically opined the observable changes in Claimant's joints and spine were "minor" and "age appropriate."  R. 2001.  The ALJ was entitled to weigh this objective finding in her consideration of the testimony of Claimant and the records of his treating physicians regarding his subjective symptoms and limitations.  *Carey*, 230 F.3d at 135.

In addition to Dr. Vorhies' opinions regarding the observable changes in Claimant's medical condition, the ALJ considered the voluminous medical record, including the reports of multiple treating doctors and VA medical consultants who did evaluate the extent of the Claimant's functional limitations over the relevant time period. The ALJ's review of the medical records focused on various objective studies, including x-rays documenting the progression of Claimant's degenerative joint disease, R. 690-91, neurology testing done in 1999 and 2001 to evaluate the progression of neuropathy, R. 688; a progress report indicating the patient had not had a recent gout attack in 1998, *id.*; a January 1999 EKG, *id.*; and an MRI scan of the back from 2002 (showing "mild" degenerative bony changes), R. 690; R. 436.  Although many of these records significantly post-date December 31, 1997, the date Claimant was last insured through the Social Security program, they have probative value to the extent the Claimant contended all of his medical conditions were progressively degenerative, and therefore using the later-in-time medical imaging studies actually provided the Claimant a significant measure of benefit of the

doubt.  Even taking these later records into account, however, the ALJ found "the medical evidence that is pertinent to the relevant period does not bear out the claimant's allegations as to the intensity, persistence, and limiting effects of pain and other symptoms through the date last insured."  R. 690.

In reaching this conclusion, the ALJ also considered notations in the medical record concerning Claimant's self-reported history and condition during the relevant time frame (and, as noted above, extending to a period shortly thereafter).  *Id.* at 691-93.  These medical history notations, documenting Claimant's contemporaneous statements to his treating physicians, showed the Claimant was "working on his small farm in April 1992," R. 692, reported exercising in 1994, *id.*, and stated that his exercise regimen included "push ups" as late as 1999.  *Id.* Through the majority of the relevant time period (through at least May 1996), Claimant self-reported on multiple occasions that his various pain symptoms were aggravated by lifting heavy weights.  *Id.*  Also documented in the medical record is a notation that the Claimant sought emergency room treatment in 1999 because he fell off of an 8-foot ladder.  *Id.*  The ALJ found this self-reported evidence that Claimant maintained a physically active lifestyle throughout the relevant time frame did not support a finding that Claimant had only a sedentary RFC during this period.  *Id.*

The ALJ has broad discretion to ALJs to evaluate a claimant's credibility by comparing the claimant's testimony to the objective medical evidence. *See e.g. Wilson v. Barnhart*, 210 F. App'x 448, 451 (5th Cir. 2006); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).  In this case, the ALJ specifically found that the medical record, "as a whole, suggests embellishment of symptoms and limitations, and diminishes the claimant's credibility on the issue of disability

during the relevant period." R. 692.  In making this credibility determination, the ALJ weighed

at least the following record evidence:

- the Claimant's 2010 testimony concerning his memory of his symptoms and limitations during the relevant time period (which was thirteen to eighteen years prior to the hearing);

- Dr. Vorhies' opinions regarding the objective medical testing done during the relevant time period,

- the additional medical testing and records relating to Claimant's functional capacity during and immediately after the relevant time period, and

- the Claimant's reported contemporaneous statements in these medical treatment records concerning his functional capacity during and immediately after the relevant time period.

R. 689-95.  The ALJ's determination that Claimant was able to perform a limited range of light

work during the relevant time period is supported by the ALJ's detailed consideration of these

multiple evidentiary sources, and the Court will not recalculate the ALJ's determination of the

weight of this evidence on review or second guess her credibility determinations.  *Randall v.*

*Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992); Adams, 833 F.2d at 512.  The Court finds the ALJ's

determination that Claimant was not disabled during the relevant time frame (1992-1997) was

supported by substantial record evidence.

24

**IV.    Conclusion**

In accordance with the foregoing,

It is ORDERED that the Commissioner's decision in the above-styled and numbered cause is AFFIRMED in all respects.

SIGNED June 26, 2015.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE